## JOHN LUOMA v. W. H. WEBB.[1]

February 9, 1923.

No. 22,997.

**Question for jury whether agent was negligent in not redeeming from foreclosure sale.**

1. Action to recover damages for negligence of plaintiff's agent, in procuring a redemption from a mortgage foreclosure sale. *Held* that the evidence made a question for the jury as to defendant's negligence.

**Charge and refusal to charge.**

2. The charge of the court, and its refusal to charge the jury in accordance with certain requests considered and *held* that the charge as a whole fairly and fully submitted the issues to the jury, and there was no error in its refusal to charge as requested.

**Admissibility of evidence.**

3. There was no error in the rulings upon the admissibility of evidence.

Action in the district court for St. Louis county to recover $8,100. The case was tried before Magney, J., who at the close of the evidence denied defendant's motion to direct a verdict in favor of plaintiff for $117.42, and a jury which returned a verdict in favor of

[1]Reported in 192 N. W. 186.

plaintiff for $4,000. From an order denying his motion to set aside the verdict and enter judgment in favor of plaintiff for $117.42, or for a new trial, defendant appealed. Affirmed.

*Warner E. Whipple* and *Hanitch, Hartley, McPherson & Johnson,* for appellant.

*John Jenswold* and *John D. Jenswold,* for respondent.


QUINN, J.

Action to recover damages for alleged negligence of the defendant Webb while acting as plaintiff's agent in procuring the redemption of 120 acres of land owned by plaintiff, from a mortgage foreclosure sale. There was a verdict of $4,000 in favor of the plaintiff. From an order denying his motion to set aside the verdict and enter judgment in favor of the plaintiff for $117.42, with interest, or for a new trial, the defendant Webb appeals.

Appellant resides at Superior, Wisconsin, and is president of the Wisconsin Loan and Trust Company of that place. Respondent owned 120 acres of land near Floodwood, in St. Louis county, this state. On November 22, 1910, respondent, his wife joining, executed to appellant a mortgage thereon for $700. Three days later they gave to the First State Bank of Floodwood a second mortgage thereon for $70. On April 6, 1911, they executed to Coolidge-Schussler Company, a third mortgage thereon for $200. These mortgages were recorded in the order given and will be hereafter referred to by number as indicated. Respondent defaulted on the second mortgage and it was foreclosed by advertisement. The land was sold under the foreclosure by the sheriff on January 16, 1913, the bank bidding it in for the amount of its mortgage and expenses. On the day of the sale the usual certificate was issued to the bank and duly recorded. Subsequently H. G. Gearhart procured an assignment of the third mortgage and on January 2, 1914, filed a notice of his intention to redeem from the foreclosure sale. On January 17, 1914, he paid to the sheriff the required amount and redeemed the premises from the sale.

On November 3, 1913, respondent, in company with his son, went

to Superior and consulted appellant with reference to the foreclosure. Respondent exhibited to appellant a printed copy of the foreclosure notice cut from the paper in which it was being published, and at the same time told appellant that the cashier of the Floodwood bank had told them that it was the first mortgage that was being foreclosed. Appellant examined the printed copy of the notice and assured respondent that such was not the case and told him what was being done, who was doing it and what the effect might be. Respondent then stated to appellant that he did not like to deal with Mr. Hingeley, cashier of the bank, and asked appellant to assist him in closing up the matter, to which appellant assented. Appellant then took the matter up with the bank by correspondence. On November 5, he received an itemized statement from the bank showing that respondent was indebted to the bank in the sum of $234.33, as follows: Upon the certificate of foreclosure, $112.92; interest coupons paid on first mortgage and taxes paid on the land, $121.41. He then wrote respondent giving him the items in detail and advising that he look after the mortgage first and pay the other items as soon as he could. On November 17 respondent sent to appellant $115 to pay on the certificate. December 8 appellant wrote respondent that he had remitted $248 to the bank and had received all the papers, including an assignment of the sheriff's certificate. Respondent answered this letter, saying that he was thankful for the favor done him and that he would send the money for the interest and taxes as soon as the roads were so that he could haul some of his produce to town.

The letters were all placed in evidence and there is little room for conjecture as to the method pursued in the premises. Appellant kept the respondent informed step by step as to what was being done. He testified that he had no knowledge whatever as to the existence of the third mortgage until after the period of redemption had expired. This evidence is uncontradicted. He insists that the only thing respondent required him to do was to assist him in clearing up the matter with the bank, as respondent did not like to deal with the cashier, and he claims that but for the existence of the

third mortgage, of which he had no knowledge, the method employed would have been in all respects effective and sufficient.

The contention on behalf of respondent is that appellant agreed and undertook, as respondent's agent, to receive the money and redeem the premises from the foreclosure sale and that in this respect he was guilty of such inexcusable negligence as to render him liable for damages on account of the loss of the land through the redemption made by Gearhart. We think the record fails to show bad faith on the part of appellant, but that the evidence made a question for the jury as to whether he was guilty of inexcusable negligence in not redeeming from the sale instead of taking an assignment of the sheriff's certificate and thereby became liable in damages to his principal. The sheriff had in hand the foreclosure and sale at the time. He alone had complete knowledge of the exact amount, including expenses, which would be necessary to effect a redemption and was the person with whom a redemption could be made. The evidence was such that the jury might, and apparently did, conclude that the understanding between the parties when the contract of agency was entered into was that appellant understood and fairly supposed that, if respondent furnished the money, appellant was to use the same to redeem from the sale, rather than to adopt any other method of protecting respondent's interest in the land, and thereby save his title. Appellant ignored the sheriff and acted entirely with the bank in the matter. If appellant did so agree, then he was duty bound to redeem from the sale the same as though his duty had been mentioned specifically when the contract of agency was made.

It is apparent from the proofs that respondent relied upon appellant to adjust the matter so that he would retain title to the land. The money furnished by respondent was not lost as it appears that appellant withdrew it from the bank subsequent to the redemption by Gearhart. The jury having found that the land was lost through the fault of appellant, he was liable for the value thereof less the incumbrances thereon in damages as the result of his negligence.

The writer does not concur in the view of the majority of the court on this phase of the case, but is of the opinion that it appears

conclusively from the record that the land was not lost solely through the fault of the agent, as the landowner had full knowledge of the existence of the third mortgage and failed to inform his agent of the fact, and that he had knowledge of his agent taking the assignment in time to redeem the land himself, which he could have done with the money furnished to appellant and by him turned over to the mortgagee, which facts of themselves should prevent a recovery.

Appellant strongly insists that the court committed prejudicial error in its charge and its refusal to charge the jury, but we are of the opinion that the charge as a whole fairly and fully submitted the issues to the jury. We find no reversible error in the rulings upon the admissibility of evidence.

Affirmed.

DIBELL, J. (concurring.)
I concur in an affirmance.